For the appellate Michael Gomez and for the applicant Lee, Timothy Londrigan, Mr. Gomez and Mr. McClendon, Michael Gomez. Good morning, your honors and counsel. May it please the court. My name is Michael Gomez from the Office of the State Appellate Defender and I'm here on behalf of my client, Devin McClendon. The Sixth Amendment guarantees the right to the effective assistance of counsel, which at the very minimum requires attorneys to provide accurate advice to their clients. Of course, attorneys can make honest mistakes, but sometimes those mistakes amount to a constitutional violation, and such is the case here. In this case, the defense counsel misadvised Mr. McClendon in two ways, and as a result, Mr. McClendon decided to plead guilty and give up his constitutional right to a fair trial, where he could have mounted a plausible defense to the charges and required the state to prove him guilty beyond a reasonable doubt. To prove ineffective assistance in a guilty plea context, Mr. McClendon has to establish, first, that his attorney provided sufficient representation, and second, that absent those errors, there is a reasonable probability that he would have rejected the guilty plea and insisted on going to trial where he could have raised a plausible defense. As I mentioned earlier, Mr. McClendon was advised in two ways. The first, which is uncontested, is that defense counsel misadvised Mr. McClendon as to the minimum sentence. It was 22 years, which is the plea offer that the state gave, as opposed to 21 years, the true minimum. In the second way, Mr. McClendon was misadvised as to the viability of a BB gun defense, or that even one existed. Mr. McClendon, as he first stated to the police when he turned himself in for this offense, in that statement said that he carried a BB gun during this offense. He had told defense counsel about this, but never knew, Mr. McClendon never knew that he could raise the BB gun defense to the firearm element of armed robbery with a firearm. In the April 24, 2014 letter, just seven months after the guilty plea, this is after Mr. McClendon had sent a couple of letters to the court, and the court forwarded those letters to defense counsel. Defense counsel responded directly to Mr. McClendon, and in that letter, defense counsel wrote, you went into a store, the Sonic, and pointed a gun at a worker. It didn't matter if it was a BB gun or a real gun. The person thought it was a real gun, and that is enough. And that is the same advice that Mr. McClendon alleges that defense counsel gave him in the three or four meetings in just the 52 days of representation before the guilty plea. Was the gun ever produced at trial? No, Your Honor. There was no trial in this case. In the co-defendant's trial, no gun was ever produced. In this case, there was no gun ever recovered. No gun was ever fired. So there's no conclusive proof that the object Mr. McClendon carried during this offense was a firearm. And he was denied that opportunity to prove that, or first to test the state's evidence on the element of firearm, or even a chance to produce that BB gun or present his own evidence in support thereof. But a co-defendant was convicted of armed robbery with a firearm, right? I'm sorry? Wasn't a co-defendant convicted of armed robbery with a firearm? Yes, Your Honor. Co-defendant Sherman Bragg was convicted of armed robbery with a firearm, but Mr. Bragg was not the one who committed the offense at the Sonic. So he was tried on an accountability theory? Correct, yes. Mr. Bragg was tried and convicted on an accountability theory. But all Mr. McClendon has to show here was that he had a plausible defense, and here he did have a plausible defense. The state's argument on appeal and the trial court's ruling below seemed to rely on an incorrect standard when analyzing the prejudice-prong-restriction analysis. It is not a sufficiency argument whether there was sufficient evidence to convict, but whether Mr. McClendon had a plausible defense. And he did have a plausible defense. First, the state's case in Mr. Bragg's trial was not overwhelming. Now, the state at the evidentiary hearing just admitted two victims' testimonies from that trial to support or to argue that there was sufficient evidence to convict. But those two victims' testimonies are just vague descriptions of the object that Mr. McClendon held during the offense. There was no conclusive evidence that it definitely was a firearm. It just says that the object was shiny, cold, hard metal, and it was also covered by a bandana, which Mr. McClendon said to the police that he covered it with a bandana to hide the letter so that the victims would think it was a real gun, again, supporting his BB gun defense. Importantly, those witnesses were not cross-examined by any attorney who was working in Mr. McClendon's best interest or in his interest at all. Those attorneys were working for Mr. Sherman Bragg. The other evidence from Mr. Bragg's trial is not in this record. It was not before the trial court. The judge was the same judge who provided over Mr. Bragg's trial, but we do not know the extent of that evidence or the foundation underlying it. There was a mention of Natasha Duvall referencing bullets, but there's no foundation or no way to attack the personal knowledge of what actually was in Mr. McClendon's hand. At the same time, Mr. Bragg's testimony that he didn't get out of the car because of a gun does not prove or disprove that the object was or was not a firearm. Finally, the court relied on a video, which was not part of this record, where the court concluded that it looked like a firearm. But that's the point of a BB gun is to look like a firearm. So again, it does not establish that this conclusively was a firearm. So Mr. McClendon had a plausible defense. Did he plead to armed robbery, straight armed robbery, or armed robbery with a firearm enhancement? Mr. McClendon pled guilty to armed robbery with a firearm, with the 15-year firearm enhancement. So his defense is not to the armed robbery or to the robbery part, but to the firearm element, which would reduce his sentence greatly if he were acquitted. The trial court even recognized that he had a plausible defense when it said that he could have been found not guilty, a quote from page 37. Now, he could have been acquitted or the jury could have determined it wasn't a firearm. That's acknowledging that he did have a plausible defense. And in Mr. McClendon's case, it would be even a stronger defense than Mr. Bragg would have had because Mr. McClendon could have testified himself, consistent with his police statement, which he gave just five days after the offense, when he turned himself in and mentioned that he carried a BB gun during the offense. But as I mentioned, Mr. McClendon has not had an opportunity to test the state's evidence. He's not had an attorney working in his interest to cross-examine him. Well, his trial counsel testified in the post-conviction hearing, right? Yes, sir. Did his trial counsel indicate whether his client had told him where this BB gun, supposed BB gun was? Well, according to defense counsel's testimony at the evidentiary hearing, he asked Mr. McClendon if he could produce the BB gun, if he could find the BB gun. Mr. McClendon said he could or would try, but defense counsel said he never did. Well, isn't that fairly significant? I'm sorry? Isn't that significant? It is not significant, Your Honor. Mr. McClendon was in jail awaiting trial. The entire period of representation here was 52 days. There were at most three to four days. Well, did he tell his attorney where he disposed of it or who he gave it to or where he got it? The record is unclear as to those specific details. That could have been part of the record on the post-conviction hearing, couldn't it? Well, there was no testimony. It could have been the defense counsel did not testify as to the specifics of those conversations that he had. He just said that Mr. McClendon said he could or would try but never did. Importantly, defense counsel never contacted any witnesses. Defense counsel never contacted the co-defendant's attorneys to see if there was any way he could develop this BB gun defense. And what is telling is that in that April 24, 2014 letters, because defense counsel was operating under a fundamental misunderstanding that a BB gun constituted a firearm under the statutes, which it does not. And, of course, defense counsel acknowledged that or said that he knew that at the evidentiary hearing. But the letter from April 24, 2014 to seven months after the guilty plea and seven months before his testimony at the evidentiary hearing, shows that he was operating under a fundamental, patently incorrect error of law. Can I ask you another question? Sure. At the time the guilty plea was made and accepted by the trial court, did the state recite a factual basis for the plea? Yes, the state recited a factual basis. And did it include the fact that he used a firearm? It said that he used a handgun. A handgun. Yes. And by pleading guilty, wasn't he accepting that factual basis? He didn't contest it or object to it in front of the judge at the time of the plea? He didn't say, judge, it was a BB gun, it wasn't a real firearm? Correct. He did not say that it was a BB gun. He did not correct the state's factual basis at that time. He was operating under the same fundamental misunderstanding that a BB gun could qualify as a handgun. To attribute or to ask that Mr. McClendon, who is untrained in the law, to know the nuances of the statutes of the Firearm Owners Identification Act, would be to require more knowledge than his own attorney who misadvised him and who misrepresented him here. Can a BB gun ever be considered a firearm? No, Your Honor. Under 430 Illinois Statute, Section 65, 1.1, the statute specifically excludes BB guns from the definition of firearm in the Ford Act. Even if the BB gun can fire a projectile at over 700 feet per second? To my knowledge, Your Honor. To my knowledge, Your Honor, a BB gun would be excluded from the definition of firearm. And you're saying that's what the statute says? Yes, I believe so, Your Honor. So if a BB gun can fire a BB at 750 feet per second, it wouldn't be considered a firearm under the statute? Based on my recollection, I do not think so, Your Honor. Okay. Continue. Well, based on Defense Counsel's misadvice and based on the fact that Mr. McClendon did have a possible defense of the firearm element, he pled guilty in reliance on that misinformation. What about the fact that in the co-defendant's trial, I believe there were text messages introduced from a girlfriend wondering about bullets and that kind of thing? Right, Your Honor. That was just a brief mention. Was that admitted into evidence at the trial of the co-defendant? Do you know? I'm not sure, Your Honor. It seemed like it was. And the trial judge said that same evidence would come into his case if he went to trial. Correct. And again, this is not a sufficiency argument. The evidence may have been sufficient to convict, but it was not so overwhelming as to render Mr. McClendon's defense implausible. And here, all he has to show is that he had a plausible defense. And he has shown that he has a plausible defense as recognized by the trial court. How would he do that? By testifying? Well, one, by attacking the State's case, by cross-examining the witnesses, with an attorney working in his best interest, but also by testifying himself. He could have exercised his right to testify and say that he had a BB gun. There were a lot of references to this testimony being or this statement being self-serving, but at the time he made it, he did not know he would have received any benefit by saying that it was a BB gun. Do you know if the co-defendant made the BB gun defense? It appears that the co-defendant may have raised the BB gun defense, or at least raised the possibility that the object in Mr. McClendon's hand was a BB gun. He was convicted anyway. And he was convicted on that evidence. But this evidence in Mr. McClendon's case would have been completely different, including his own testimony of the object that he carried. And for the aforementioned reasons, we ask that this Court reverse the denial of Mr. McClendon's post-conviction petition and remand for an opportunity for him to withdraw his guilty plea. Thank you. You'll have rebuttal, Mr. Lundgren. Thank you, Your Honors. May it please the Court, Counsel. Obviously, Your Honors, we're here on a post-conviction petition. The defendant is suggesting that there's a constitutional violation, that he has not been provided effective assistance of counsel. He raises two issues in support of that argument, the first one being that he was improperly advised as to the proper sentence. The State concedes that he was not properly advised as to what the exact minimum sentence was in this instance. It was 21 years, not 22. As counsel advised him, however, we feel that that erroneous advice was insignificant, would have had no application or effect in this particular defendant's plea. In fact, this defendant was somewhat sophisticated in the criminal procedures. He was advised or admonished by the trial court that 21 years was the minimum, both at the time of his arraignment and at the time that they accepted his plea. And the fact that he would turn down this plea, knowing that he had potentially a sentence twice what he received if found guilty, I think is implausible. The suggestion that he would have turned down the offer that was made to him, had he known that he could have received a sentence of 21 years, I think is unreasonable and improperly rejected by the trial court. The comments by the court were pretty telling. I think that this gentleman would have received a very substantial sentence had he gone to trial and lost, and I think this defendant knew it. In fact, I don't believe this issue is actually strenuously argued by the defendant on appeal, but nevertheless it's raised. I think the primary issue is one of proof. They're suggesting that he was, the defendant, improperly advised as to whether or not a BB gun was a firearm for purposes of the enhancement statute. However, we had a hearing on this. That's the purpose for having an evidentiary hearing so that the trial court can consider all the evidence that the defendant wishes to produce to support that contention. The trial court heard that evidence and decided that was not true. The defense counsel specifically advised, or testified rather, that he advised the defendant on numerous occasions they had lengthy discussions about this particular issue. He told them that this use of a BB gun would not qualify as a firearm for purposes of enhancement of his sentence. However, this issue is going to be rampant with problems if they attempted to go forward with it. Basically, they had no evidence in support of it other than the self-serving testimony of this defendant. Counsel argues on appeal that it's a viable defense. I don't know how one characterizes a viable defense, but a defense absent evidence in support of it, I would suggest is not viable. If the defendant were to take the stand and make this argument, obviously he's conceding the fact that he was the one that robbed the store, so that removes it. He takes great risk taking this to trial, admitting that he was the one robbing the store, but suggesting that this was a BB gun in absence of any gun, in absence of anybody that will testify that it was a BB gun, and in contradiction to his co-defendants who would testify, as the court has mentioned, that they were afraid bullets would be fired. I think it was Mr. Ball that testified to that, or at least that was in some text correspondence. The co-defendant, Mr. Bragg, was going to testify that he couldn't get out of the car because the man, the defendant in this instance, had a gun. He testified that he was attempting, I think, to get a gun that day, not a BB gun, an actual weapon. Of course, the trial court was aware of all this because it sat through that trial as well. So the evidence that the defendant has produced in his post-conviction petition is clearly insufficient to establish that he had a viable defense. If the defendant had shown that he used a BB gun, would he still have been guilty of armed robbery? That's not my understanding, Judge. I understand the court's concern there, and I agree. If you can shoot a projectile 700 feet a second, you'd think that would be sufficient harm. No, I'm saying if the defendant could have successfully shown he used a BB gun, which was not considered a firearm, would he still have been guilty of armed robbery? Yes. And would he still have been subject to a 6 to 30-year sentence because armed robbery is a Class X? Yes. And he would have been sentenced by Judge DeFantis? Yes. Okay, thanks. If there's no other questions, Your Honors, thank you. Thank you. Any rebuttals? Your Honor, once again, the State operates on the premise that this is a sufficiency test, that Mr. McClendon has to pass on appeal. And the State claims that Mr. McClendon would have been found guilty and would have received a longer sentence, but he did have a viable defense to discharge. He had a viable defense. The evidence that was admitted in Mr. Bragg's trial was not completely before this Court. It was not entirely admitted at the evidentiary hearing. But there is enough here for this Court to take note that Mr. McClendon could have attacked the foundation for even the evidence that was not before the trial court, such as Mr. Ball's testimony or text messages that bullets were referenced or Mr. Bragg's supposed testimony that he tried to get a gun earlier that day. We have no idea the context for those statements. Mr. McClendon could have testified at his own trial, and he could have placed himself at the scene of the robbery as he did with the police, but he still did have a viable defense, and that's all he had to prove here. And for those reasons, we ask that this Court reverse its trial court. Thank you. Thanks to both of you. The case is submitted. The Court stands in recess until after lunch.